**Opinion issued April 21, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00626-CV

————————————

**SHILOH TREATMENT CENTER, INC., SHILOH II, LLC, BEHAVIOR TRAINING RESEARCH, INC., AND CLAY DEAN HILL, Appellants**

**V.**

**DESTIN ED WARD, Appellee**

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Case No. 68156**

---

## O P I N I O N

This is an interlocutory appeal from the denial of a motion to dismiss for failure to serve an expert report under the Texas Medical Liability Act. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West

Supp. 2014)). We are asked: (1) whether a residential treatment center for young people with intellectual and mental disabilities has demonstrated itself to be a "health care provider"; (2) whether an alleged failure of that facility to properly supervise a resident with a mental disability is a "health care liability claim"; and (3) when may a defendant amend its answer to include these issues. We conclude that the answer to the first question is "no" and do not reach the second and third issues. Accordingly, we affirm.

## Background

Shiloh Treatment Center Inc. ("Shiloh Treatment"), Shiloh II, LLC ("Shiloh II"), Behavior Training Research, Inc. ("Behavior Research"), and Clay Dean Hill (collectively, "Shiloh"), along with several co-defendants who did not join this appeal, ran a group of facilities for young people with mental disabilities in Manvel, Texas. One of the residents, Destin Ed Ward, walked off the campus and wandered around the Manvel area for several hours without any supervision. A car hit Ward and severely injured him.

Ward filed this lawsuit against Shiloh and a number of other defendants. According to his petition, "[t]he residential facility where Destin Ward was housed failed to have an adequate alarm to alert . . . his immediate staff. Furthermore, the staff inadequately supervised Destin Ward allowing him to leave and wander the neighborhood and ultimately be run over and severely injured." All defendants

2

timely answered. Ten months later, defendants amended their answer, asserting that Ward's claim was a health care liability claim under the TMLA.

Under the version of the TMLA in effect at that time:

> (a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports . . . .
>
> (b) If . . . an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall . . . enter an order that:
>
>> (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and
>>
>> (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

Act of May 12, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590 (amended 2013). Ward had not served any expert report. Accordingly, defendants also filed a motion to dismiss.

Ward responded that his claim was not a health care liability claim. In support of this argument, he filed his Second Amended Petition, which states, "Defendants do not provide medical care and treatment under any condition. . . . These are boarding and schooling services." It also averred, "This is specifically not a healthcare liability claim."

Ward also filed a response to the motion to dismiss and attached evidence that Shiloh did not provide health care. First, he attached Shiloh Treatment's

3

Articles of Incorporation, which state that it provides "community homes and supervision," and Behavioral Training Research's Articles of Incorporation, which state that it "operate[s] a private school for development of the disabled" and "carr[ies] on instruction and research in the field of autism." Second, he attached an affidavit from the father of a young person with autism who was transferred from Pasadena I.S.D. to Shiloh Treatment "in lieu of attending a school." Third, he attached a "Health and Education Passport" listing Shiloh Treatment as Ward's school. Fourth, he attached depositions from administrators explaining some of the campus's internal operations.

Defendants produced several pieces of evidence in rebuttal. First, they showed that Shiloh Treatment was a licensed "residential treatment center." Second, they produced medical documentation showing that, before his accident, Ward was taking several psychiatric medications and receiving therapy at Daystar—a defendant who did not join this appeal—from a licensed clinical social worker to treat "aggressive behavior," "suicidal ideation," "psychotic symptoms," "mood stability," and truancy.

The trial court denied defendants' motion to dismiss. Shiloh timely appealed.

4

## Applicability of TMLA

This case asks us to determine whether Ward asserted a health care liability claim against Shiloh. There are three elements of a health care liability claim:

> (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

*Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 758 (Tex. 2014). "No one element, occurring independent of the other two, will recast a claim into a health care liability claim." *Id.* Ward contends that neither the first nor the second element apply to his claims. For the reasons stated below, we agree that Shiloh did not demonstrate—on this appellate record—that it was a health care provider.

### A.    Standard of review

Generally, we review a trial court's order granting or denying a motion to dismiss under section 74.351 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). But whether a petition asserts a health care liability claim under the statute is a question of law reviewed de novo. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 818 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "[W]hen making that determination courts should consider the entire court record,

including the pleadings, motions and responses, and relevant evidence properly admitted." *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012).

**B.    Shiloh Treatment is not a health care provider**

Health care liability claims can only be asserted against physicians or health care providers. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West Supp. 2014). "'Health care provider' means any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care." *Id.* § 74.001(a)(12)(A). "'Health care' means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10). The burden falls on the party seeking dismissal to show that it is a health care provider. *Obstetrical & Gynecological Assocs., P.A. v. Hardin*, No. 01-13-00236-CV, 2013 WL 6047595, at *2 (Tex. App.—Houston [1st Dist.] Nov. 14, 2013, no pet.) (mem. op.).

The Child-Care Licensing Division of the Texas Department of Family and Protective Services licensed Shiloh Treatment as a residential treatment center, which is a type of "general residential operation." A general residential operation is "a child-care facility that provides care for more than 12 children for 24 hours a day." TEX. HUM. RES. CODE ANN. § 42.002(4) (West 2011). Shiloh Treatment's

permit specifically lists: "Type[s] of Treatment Services[:] Emotional Disorders[,] Mental Retardation[, and] Pervasive Developmental Disorders."

Shiloh Treatment argues that because its child-care license includes treatment services, it was "licensed . . . to provide health care." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A). We disagree. Shiloh provided no evidence of what treatment services it provided. According to the Department of Family Services, treatment services are "a specialized type of *child-care services* designed to treat and/or support children." 40 TEX. ADMIN. CODE § 748.61(2) (West 2015) (emphasis added). "Child-care services [means] services that meet a child's basic need for shelter, nutrition, clothing, nurture, socialization, and interpersonal skills, care for personal health and hygiene, supervision, education, and service planning." *Id.* § 748.61(1). This suggests that these services are general in nature and not medical services.

Shiloh is not licensed to be anything other than a residential treatment center. For example, mental hospitals licensed under Chapter 577 of the Texas Health and Safety Code are health care providers. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(11), (12)(A), (16). But Shiloh Treatment did not have this license and thus was not authorized to be a mental hospital. *See* TEX. HEALTH & SAFETY CODE ANN. § 577.001 (West 2009). Similarly, "intermediate care

7

facilit[ies] for the mentally retarded"[1] licensed under Chapter 252 of the Texas Health and Safety Code are also health care providers under the TMLA. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(11), (12)(A), (18). That chapter governs the licensing of "a home or an establishment that: (A) furnishes food, shelter, and treatment or services . . . ; (B) *is primarily for the diagnosis, treatment, or rehabilitation* of persons with mental retardation or related conditions; and (C) provides . . . continuous evaluation, planning, 24-hour supervision, coordination, and integration of health or rehabilitative services . . . ." TEX. HEALTH & SAFETY CODE ANN. § 252.002(4) (West 2009) (emphasis added). But Shiloh did not have this license and was not authorized to "establish, conduct, or maintain a facility" that meets this definition. *See id.* § 252.031 (West 2009).

In addition, the record contains no evidence that Shiloh Treatment actually provided any medical care or treatment to Ward or any other person. There is no indication of how many members of Shiloh's staff, if any, were medical personnel. There is no evidence regarding the extent that medical personnel controlled or influenced any child-care services rendered to Ward. There is no medical documentation from Shiloh Treatment in the record. The entire record contains only one medical record: a three-page treatment summary of unknown provenance

---

[1]  We recognize that the proper term is "people with intellectual disabilities." *See* TEX. GOV'T CODE ANN. § 325.0123 (West 2013).

indicating that Ward saw a licensed clinical social worker at Daystar. But the record neither demonstrates that Daystar and Shiloh Treatment are the same entity nor describes the relationship between the two entities. Moreover, the record does not reveal who employed this social worker, what his relationship was to Daystar or Shiloh, or how Ward became the social worker's client.

The limited evidence from the record suggests that Shiloh Treatment was essentially a school for young people with mental disabilities. There is evidence that Shiloh Treatment held itself out to be a school and received educational placements from the local school district. Foster-care documentation lists Shiloh Treatment as Ward's school. The three-page medical record also lists Shiloh Treatment as Ward's school.

At oral argument, Shiloh contended that paragraphs 11, 12, and 15 of the petition demonstrate that Shiloh Treatment was a health care provider. Paragraph 11 indicates that Ward was placed at the Manvel facility "for boarding and schooling" and that he had been "previously treated elsewhere for certain emotional disorders." Paragraph 12 alleges that Shiloh and the co-defendants were "aware of these needs and promised to provide appropriate residential and educational supervision." Finally, Paragraph 15 asserts that "the boarding and schooling in actuality was poorly managed." These allegations concern boarding and schooling, not medical treatment. They provide no evidence that Shiloh was

9

licensed to provide medical treatment and no evidence that it actually provided any medical treatment.

Shiloh also relies on the regulatory definition of residential treatment center: "A general residential operation for 13 or more children or young adults that exclusively provides treatment services for children with emotional disorders." 40 TEX. ADMIN. CODE § 748.43(40) (West 2015). But this definition says nothing about the kind or degree of treatment services rendered or the severity of emotional disorders treated.

Although Shiloh Treatment was authorized to provide treatment services for emotional disorders, this alone cannot be enough to make it a health care provider. Meriam-Webster's Collegiate Dictionary defines treatment as "the act . . . of treating someone." MERIAM-WEBSTER'S COLLEGIATE DICTIONARY 1333 (11th ed., 2003). The verb "to treat" means either "to care for or deal with medically or surgically" or, more broadly, "to act upon with some agent, [especially] to improve or alter." *Id.* A pedicurist may be said to "treat" a callous; a yoga instructor may be said to "treat" anxiety; a teacher may be said to "treat" a learning difference. But none are automatically health care providers rendering medical treatment to patients. *See generally Skloss v. Perez*, No. 01-08-00484-CV, 2009 WL 40438, at *4 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.) (mem. op.) (licensed

professional counselor was health care provider because she was licensed to provide medical treatment to patients).

Schools, after-school programs, and day cares must frequently treat and support students with various degrees of emotional- and mental-health issues in the course of their licensed child-care activity. At oral argument, Shiloh conceded that none of these are health care providers.

Given the sparse record evidence, we cannot conclude that Shiloh Treatment was "duly licensed, certified, registered, or chartered by the State of Texas to provide health care." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A). Accordingly, it is not a health care provider.

## C.    Shiloh II, Behavior Research and Clay Hill are not health care providers

Health care providers also include "(i) an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician; and (ii) an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(B).

Clay Hill contends that he is a health care provider because he is the President of Shiloh Treatment. Shiloh II and Behavior Research contend that they are health care providers because they are affiliates of Shiloh Treatment.

11

Regardless, Shiloh Treatment is not a health care provider, and thus neither are its officers or affiliates.

## Conclusion

Because Shiloh has not shown that Ward asserted a claim against a health care provider, we conclude that Ward has not asserted a health care liability claim. We affirm the order of the trial court and remand for further proceedings consistent with this opinion.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.