ACCEPTED
05-17-01399-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
2/8/2018 2:38 PM
LISA MATZ
CLERK

## NO. 05-17-01399-CV

### IN THE FIFTH COURT OF APPEALS
### DALLAS, TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

2/8/2018 2:38:03 PM

LISA MATZ
Clerk

**PROPATH SERVICES, LLC,** *ET AL.*                    *Appellants*


**v.**


**AMANDA RUSS,** *ET AL.*

*Appellee*s


## BRIEF OF APPELLEES


Respectfully submitted,

**THE LEWIS LAW FIRM**

*/s/   Craig Lewis*
Craig Lewis
State Bar No. 12283500
Email: barbaran@LLF7.com
Aaron J. Arenas
State Bar No. 24103826
Email: aarona@LLF7.com
3131 Eastside Street, Suite 425
Houston, Texas 77098
Telephone: (713) 842-7080
Facsimile: (832) 649-7239
**APPEAL COUNSEL FOR PLAINTIFFS/**
**APPELLEES, AMANDA RUSS,** *ET AL.*


### ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

**Appellees and counsel:**

**AMANDA RUSS, Individually, as the Personal, Representative of the Estate of STEPHEN RUSS, Deceased and As Next Friend of TR, a Minor**

Trial Counsel: Craig Lewis
State Bar No. 12283500
Aaron J. Arenas
State Bar No. 24103826
THE LEWIS LAW FIRM
3131 Eastside Street, Suite 425
Houston, Texas 77098

Appellee Counsel: Craig Lewis
State Bar No. 12283500
Aaron J. Arenas
State Bar No. 24103826
THE LEWIS LAW FIRM
3131 Eastside Street, Suite 425
Houston, Texas 77098

**Appellants and counsel:**

**PROPATH SERVICES, LLC, and TERRY L. BARRETT, M.D.**

Trial Counsel: Joseph A. Turano
State Bar No. 20295200
Carol D. Williamson
State Bar No. 00878385
P. Michael Jung
State Bar No. 11054600
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202

Appellate Counsel: P. Michael Jung
State Bar No. 11054600
Joseph A. Turano
State Bar No. 20295200
STRASBURGER & PRICE, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Whether the trial court abused its discretion in denying Defendants/Appellants'
motion to dismiss under TEX. CIV. PRAC. & REM. CODE §74.351. . . . . . . . . 1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    I.    **The Honorable Eric V. Moyé Did Not Abuse His Discretion
by Denying Appellant's Motion to Dismiss**. . . . . . . . . . . . . . . . . 16

        A.    *Standard of Review*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        B.    *Judge Moyé did not abuse his discretion in determining
that the expert report of Andrzej T. Slominski, M.D.,
Ph.D., informed Appellants of the specific conduct called
into question and provided the trial court with a basis to
conclude this case has merit*. . . . . . . . . . . . . . . . . . . . . 19

        C.    *Judge Moyé did not abuse his discretion in determining
that Dr. Slominski is qualified to render an opinion on*

*the standards of care and causation* . . . . . . . . . . . . . . . . . . 32

**II.    Alternatively, If the Expert Report Dr. Slominski is Found Deficient, This Court Should Remand the Case to the Trial Court and Order that Appellee be Provided with a Thirty-Day Extension to Cure any Deficiency** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# INDEX OF AUTHORITIES

*Cases*

*American Transitional Care Centers of Tex. Inc. v. Palacios*, 46 S.W.3d 873 (Tex. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20, 21, 31

*Austin Heart, P.A. v. Webb*, 228 S.W.3d 276 (Tex. App.—Austin 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Blan v. Ali*, 7 S.W.3d 741 (Tex. App.—Houston [14th Dist.] 1999, no pet.) . . . . 33

*Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48 (Tex. 2002) . . . . . . . . . . . . . . . . . 21

*Collini v. Pustejovsky*, 280 S.W.3d 456 (Tex. App.—Fort Worth 2009, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Davis v. Huey*, 571 S.W.2d 859 (Tex.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Diagnostic Research Group v. Vora*, 473 S.W.3d 861 (Tex. App.—San Antonio 2015, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex. 1985) . . . . . . . . 18

*Flores v. Fourth Court of Appeals*, 777 S.W.2d 38 (Tex. 1989). . . . . . . . . . . . . 17

*Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855 (Tex. App.—Houston [1st Dist.] 2006, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80 (Tex.1992). . . . . . . . . . . . . 19

*In re Estate of Denman*, 362 S.W.3d 134 (Tex. App.—San Antonio 2011, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re. R.O.C.*, 131 S.W.3d 129 (Tex. App.—San Antonio 2004, no pet.). . . . . . . 19

*Isaacs v. Bishop*, 249 S.W.3d 100 (Tex. App.—Texarkana 2008, pet. denied) . . 18

*Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (Tex. 1985) . . . . . . . . . . 17

*Jones v. Strayhorn*, 321 S.W.2d 290 (Tex. 1959) . . . . . . . . . . . . . . . . . . . . . . 18

*Loaisiga v. Cerda*, 379 S.W.3d 248 (Tex. 2012). . . . . . . . . . . . . . . . . . . . . . 19, 20

*Loftin v. Martin*, 776 S.W.2d 145 (Tex. 1989) (orig. proceeding) . . . . . . . . . . . . 18

*Lutheran Social Services, Inc. v. Myers*, 460 S.W.2d 887 (Tex. 1970) . . . . . . . . 16

*Menefee v. Ohman*, 323 S.W.3d 509 (Tex. App.–Fort Worth 2010, no pet.) . . . . 33

*Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997) . . . . . . . . . . 30

*Mosely v. Mundine*, 249 S.W.3d 775 (Tex. App.—Dallas 2008, no pet.). . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7, 8, 9, 11, 12, 13, 15, 20, 22, 27, 28, 29, 31, 32

*Ortiz v. Patterson*, 378 S.W.3d 667 (Tex. App.—Dallas 2012, no pet.). . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 28, 29

*Renaissance Surgical Ctrs.-South Tex. L.L.P. v. Jimenez*, No. 13–07–121–CV, 2008 Tex.App. LEXIS 6857 (Tex.App.-Corpus Christi Aug.28, 2008, no pet.) (mem.op.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Scoresby v. Santillan*, 346 S.W.3d 546 (Tex. 2011) . . . . . . . . . . . . . . . . 19, 21,35

*Southwestern Bell Tel. Co. V. Johnson*, 389 S.W.2d 645 (Tex. 1965) . . . . . . . . . 18

*Tenet Hospitals Ltd. v. Barajas*, 451 S.W.3d 535 (Tex. App.—El Paso 2014, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wissa v. Voosen*, 243 S.W.3d 165, 169 (Tex. App.—San Antonio 2007, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Wolfson v. BIC Corp.*, 95 S.W.3d 527 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Statutes*

TEX. CIV. PRAC. & REM. CODE § 74.351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 35

# STATEMENT OF THE CASE

Nature of the Case:    Appellees, Amanda Russ, Individually, As Personal Representative of the Estate of Stephen Russ, Deceased, and As Next Friend of TR, a Minor, brings this wrongful death and survival action against ProPath Services, LLC, and Terry L. Barrett, M.D., for medical negligence. (CR 107).[1] It is undisputed that Terry L. Barrett, M.D. misdiagnosed Stephen Russ's cancer, thereby causing over a year's delay in Mr. Russ receiving timely and proper Melanoma cancer treatments - during which time Mr. Russ's misdiagnosed Melanoma went from a cancer stage where Mr. Russ's survivability at five years was 81% to a Melanoma Stage IIIC, where the survival rate at five years is 40%. (CR 138-141). At the young age of 46, Mr. Russ died on August 1, 2017. (CR 109).

Course of Proceedings:    Appellants have correctly stated the course of proceedings and the trial court's disposition.

# ISSUE PRESENTED

Whether the Honorable Judge Eric V. Moyé abused his discretion in overruling Defendants/Appellants' objections to Plaintiffs'/Appellees' expert report and denying Defendants/Appellants' motion to dismiss under Tex. Civ. Prac. & Rem. Code §74.351.

---

[1] Abbreviations used for the Clerk's Record is noted throughout as "CR." Abbreviations used for the Reporter's Record is noted throughout as "RR."

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe oral argument will assist this Honorable Court in its decisional process with respect to this case for at least two reasons. First, although the Appellants' brief pays "lip service" to abuse of discretion as the proper appellate standard by which the Honorable Judge Moyé's order denying dismissal is to be judged, the Appellants' brief largely consists of an attempt to try *de novo* the content of Dr. Slominski's expert report, which is improper and serves as a rabbit trail of sorts, and is clearly contrary to established Texas case law with respect to the adequacy of expert reports. Oral argument will force the Appellants to focus on where they allege Judge Moyé abused his discretion, the proper standard of review. Appellants' brief has failed to show that Judge Moyé ignored the law, was ignorant of the applicable law, and/or acted arbitrarily, without reference to guiding rules and principles in denying the Appellants' motion to dismiss.

The second reason why oral argument would assist this Honorable Court in its decision-making process lies in applying the facts and circumstances of this case to this Court's appellate decision in *Mosley v. Mundine*, 249 S.W.3d 775 (Tex. App.—Dallas 2008, no pet.). The present case is almost identical to the issues addressed by this Court in *Mosely*, in that it involves alleged negligence in the

diagnosis and delayed treatment of cancer and the adequacy of the expert report in providing sufficient facts with respect to the issues of medical causation and survivability. In *Mosely,* this Court found less than five lines in an expert's report to be adequate and non-conclusory in describing medical causation and survivability. In the present case, Plaintiffs' retained expert, Dr. Andrzej T. Slominski, devotes over three pages of his five-page expert report to factually describing how the alleged negligence of the Appellants caused injury to Mr. Russ, and how it affected Mr. Russ's survivability. The transcript of the oral hearing on the Appellants' motion to dismiss demonstrates that Judge Moyé addressed and discussed the *Mosely* case, as well as other Texas cases, prior to rendering his order denying the Appellants' motion; therefore, oral argument will assist this Court in determining whether Judge Moyé abused his discretion when he considered and followed this Court's application of the facts to the law in the *Mosely* opinion.

On the other hand, once this Court compares the three-page discussion of medical causation in Dr. Slominski's report with the less than five-line discussion of medical causation in the report in the *Mosely* case, oral argument may be totally unnecessary in affirming Judge Moyé's order that denied the Appellants' motion.

## STATEMENT OF FACTS

**The Beginning.** On January 29, 2015, Mr. Stephen Russ saw a dermatologist, Dr. Peter Morrell, M.D., complaining of a lesion on his right cheek. (CR 3). A biopsy was performed and the sample was sent to Propath Services, LLC for a pathology analysis. *Id*. Terry L. Barrett, M.D evaluated the biopsy from Mr. Russ's cheek and diagnosed Mr. Russ as having squamous cell carcinoma. *Id*.

On February 17, 2015, Mr. Russ returned to see Dr. Morrell and was informed of his squamous cell carcinoma diagnosis. (CR 4). That same day, a procedure was performed to "cut out" the cancerous lesion. *Id*. Mr. Russ followed up with Dr. Morrell two more times. *Id*. On May 29, 2015, Mr. Russ had his last follow-up with Dr. Morrell, who informed Mr. Russ that he didn't need to be seen for a year. *Id*.

Upon noticing pain in his neck, in early May of 2016, Mr. Russ was seen at Baptist Hospitals of Southeast Texas in Beaumont, where via a biopsy of one his lymph nodes, he was diagnosed as having melanoma. (CR 140). Mr. Russ was immediately referred to the MD Anderson Cancer Center in Houston, Texas. (CR 4). While at MD Anderson, Dr. Barrett's mistake was discovered. *Id*. M.D. Anderson obtained Mr. Russ's original biopsy from ProPath Services, LLC, and reread the same biopsy slides at M.D. Anderson. Physicians at M.D. Anderson, after re-reading the original biospy slides, determined that as of January 29, 2015, Mr. Russ was suffering

-4-

from Stage IIA melanoma. *Id*. The lesion on Mr. Russ's cheek, analyzed by Dr. Barrett in January, 2015, was not squamous cell carcinoma; instead, it was Stage IIa melanoma. *Id*. By the time Mr. Russ had presented to MD Anderson in May of 2016, Mr. Russ's melanoma had progressed to a Stage IIIC because of Dr. Barrett's error. *Id*.

**The Lawsuit**.    By August of 2016, Mr. Russ's melanoma had progressed to a Stage IV, M1C. (CR 14). By November of 2016, an MRI performed at MD Anderson revealed that his cancer had further metastasized to his brain. As a result of the error by Dr. Barrett, Stephen Russ filed suit on March 3, 2017. (CR 10). On August 1, 2017, Stephen Russ passed away, leaving behind his wife, Amanda Russ, and TR, the minor child of Amanda and Stephen Russ. (CR 109). This suit was continued as a wrongful death and survival action brought by Amanda Russ, Individually, As Personal Representative of the Estate of Stephen Russ, and As Next Friend of TR, a Minor. (CR 106).

**The Expert Report**.    In compliance with Tex. Civ. Prac. & Rem. Code § 74.351(a), Mr. Russ timely served on all parties the expert report and curriculum vitae of Andrzej T. Slominski, M.D., Ph.D. (CR 137-184). Dr. Slominski, who is double-board-certified in Dermatopathology and Anatomic Pathology, has extensive training, research and experience in cancers, including melanoma. (CR 138). Having

undertaken postdoctoral training at Yale University School of Medicine, as a Postdoctoral Fellow in the Department of Dermatology, Dr. Slominski has served as a Professor of Pathology, a Professor of Dermatology, as the Senior Scientist at the Comprehensive Cancer Center at the University of Alabama. (CR 142). He has served on Cancer Research Committees; he has served on editorial appointments to various peer-review journals, including Melanoma Management; he has conducted funded research "on the role of melanogenesis in regulation of melanoma behavior"; and has authored and co-authored numerous peer-reviewed publications on the subject matters of cancer and melanoma. (CR 138, 151). Of significance, Dr. Slominski has also authored and co-authored at least one textbook chapter pertaining to skin cancers, and as his *curriculum vitae* of 43 pages demonstrates, is imminently qualified to express opinions with respect to the breach of the standard of care by the Appellants and how that breach caused injury to Mr. Russ and decreased Mr. Russ's chances of survivability. (CR 142-184). Specifically, Dr. Slominski's expert report lays out his extensive expertise with respect to the issues in this case, how Dr. Barrett breached the standard of care by erroneously diagnosing Mr. Russ with squamous cell carcinoma instead of melanoma, and how that breach was a cause of Mr. Russ's injuries. (CR 137-141).

**Appellants' Objections and Motion to Dismiss**.    The defendants filed objections to Dr. Slominski's report and a motion to dismiss. (CR 24-36). The defendants originally challenged the qualifications of Dr. Slominksi, and further claiming that the totality of Dr. Slominski's discussion of medical causation was conclusory and the report itself for purportedly failing to demonstrate causation. *Id*. However, the objection with respect to Dr. Slominski's qualifications to express opinions concerning medical causation in this case have been abandoned, and are not raised by the Appellants in their appellate brief. The plaintiffs filed their response on October 17, 2017. (CR 114-136).

**The Hearing**.      On October 20, 2017, a hearing was held in the 14th Judicial District Court of Dallas County, Texas before the Honorable Eric V. Moyé for defendants' objections and motion to dismiss. (RR 1). Counsel for defendants began by stating that Dr. Slominski's report was conclusory and attempted to distinguish plaintiffs' use of *Mosely v. Mundine* to the case at hand. (RR 6-9). In an attempt to point out the differences between Dr. Slominski's report and the report in *Mosely*, defendants' counsel quoted part of the *Mosely* opinion, stating "The facts in the expert report concluded that the plaintiff has a poor prognosis given the extent of the tumor growth and required lung resection, chemotherapy and radiation, and had it

been detected earlier there would have been a much less invasive treatment protocol and the delay diagnosis required invasive and aggressive treatment." (RR 8).

Judge Moyé asked plaintiffs' counsel where it was in the report where Dr. Slominski addressed causation. (RR 10). As Plaintiffs' counsel was about to discuss the extensive factual discussion of causation on over three pages of Dr. Slominski's five-page report, Plaintiffs' counsel began by pointing out on page two of Dr. Slominski's report, comparing it to the report of *Mosely*, stating: "This diagnosis resulted in a delay of over a year before Mr. Russ's melanoma was correctly diagnosed and treated. A delay which allowed the melanoma to continue to progress to the point that in reasonable medical probability, Mr Russ may die as a result of the unfortunate delay before melanoma treatment could begin, whereupon Judge Moyé briefly interrupted, questioning Appellants' counsel as to why that did not address medical causation. (RR 11).

Counsel for defendants replied to Judge Moyé that "an expert can't just say it's my belief the delay caused this." (RR 11). Plaintiffs' counsel replied by telling Judge Moyé that the important aspects of the delay is further addressed in Dr. Slominski's report, both in terms of the aggressive treatment necessary after the delay, and what was done because of the delay. (RR 12). Plaintiffs' counsel also referred Judge Moyé to the part in Dr. Slominski's report which indicates that because of the delay, Mr.

Russ's life expectancy was substantially reduced. (RR 12-13). Plaintiffs' counsel argued that in determining the adequacy of an expert's report as to causation, the Dallas Court of Appeals looked at the delay, subsequent treatment, and reduction in life expectancy, which Dr. Slominski's report also does. *Id*.

What is clearly evident from the transcript of the oral hearing is that throughout the proceeding, Judge Moyé demonstrated his impeccable knowledge of the applicable law, the applicability of the *Mosely* opinion from this Court, to the facts of this case, and never once showed that he was going to be arbitrary or unreasonable in applying the facts of this case, the four corners of Dr. Slominski's report, and the applicable law that was set forth in the briefs before him and during the oral argument. Defense counsel argued the applicability of *Ortiz v. Patterson*, 378 S.W.3d 667 (Tex. App.—Dallas 2012, no pet.), and at the conclusion of the hearing, Judge Moyé told each counselor that he wanted additional time to review *Mosely* and *Ortiz*, and would make a decision. (RR 13).

**The Appeal**.     On November 20, 2017, Judge Moyé entered an order overruling defendants' objections and denying their motion to dismiss. (CR 197). Appellants timely filed a notice of appeal. (CR 198-199). Appellants' brief solely focuses on whether Dr. Slominski's expert report is conclusory as to causation, and whether certain nationally recognized standards and data published by the American

Cancer Society may be referred to by Dr. Slominski in additional support of his opinions with respect to medical causation and survivability. No issue is raised by Appellants on appeal that Dr. Slominski is not qualified to render an opinion with respect to the standards of care or causation applicable in this case.

## SUMMARY OF THE ARGUMENT

The sole standard for review of this appeal is whether the Honorable Eric V. Moyé abused his discretion in denying the Appellants' motion to dismiss. That is, the Appellants have the onerous burden of proving that Judge Moyé ignored the law, was ignorant of the applicable law, and/or acted arbitrarily, without reference to guiding rules and principles in denying the Appellants' motion to dismiss. The Appellants have wholly failed to show that Judge Moyé was guilty of an abuse of discretion.

As discussed in detail throughout this brief, Dr. Slominski's expert report discusses in detail the standard of care with respect to a Dermatopathologist like Dr. Barrett, how Dr. Barrett breached that standard of care, the care that was expected but not given to Mr. Russ, the subsequent aggressive cancer treatment Mr. Russ had to endure as a result of Dr. Barrett's breach of the standard of care, and the substantial decrease in Mr. Russ's life expectancy because of Dr. Barrett's breach of the standard of care. In a strikingly similar case, this very Court has discussed how a plaintiff's expert report under Chapter 74 of the Texas Civil Practice and Remedies Code is

adequate when it discussed how the breach of the standard of care resulted in a delay in the proper cancer diagnosis, subsequent aggressive treatment, and a reduction in life expectancy. *See Mosely v. Mundine*, 249 S.W.3d 775 (Tex. App.—Dallas 2008, no pet.).

In *Mosely*, the defendant physician challenged the expert report of plaintiff's retained expert, stating that it was conclusory as to causation, and failed to meet the requirements of Chapter 74 of the Texas Civil Practice and Remedies Code. *Id.* at 780. There, plaintiff brought suit for the defendant's negligence in failing to detect a one-centimeter nodule in her lung, and later failing to inform the patient of the nodule once it had been discovered. *Id.* at 777. When the plaintiff presented to the hospital approximately two years later, a CT scan revealed a five to six-centimeter nodule, which not only became cancerous, but also had spread throughout her body. *Id.* In his report, plaintiff's expert, who was an emergency room physician and internist, stated the following regarding the facts of this case and his opinions:

> [Defendant] failed to identify the early cancer nodule in [plaintiff] in 2004. This failure resulted in delayed diagnosis of lung cancer, required invasive and aggressive treatment and in all medical probability, significant reduction in the life expectancy of [plaintiff].

*Id.* at 780.

This language, alone, was enough for this Court to conclude that the plaintiff's expert's opinions were not conclusory. *Id.* To address the spreading cancer, the plaintiff had to undergo a right upper lobectomy, partial lower lobectomy, and aggressive chemotherapy. *Id*. at 777.

In stark contrast to the five lines pertaining to medical causation in the *Mosely*-plaintiff's expert report, which this Court determined to be non-conclusory and sufficiently factual, is the expert report of Dr. Slominski, containing over three pages of factually intensive discussion of medical causation and survivability – all of which will be discussed in detail in a later portion of this brief.

Appellants' attempt to compare Dr. Slominski's report to the report in *Ortiz v. Patterson* is totally unpersuasive. Neither the facts nor the expert report in *Ortiz* even remotely resemble the facts and the expert report in this case, or in the *Mosely* case. The expert report in *Ortiz* contained one sentence regarding causation that did not describe, with facts, how the breach of the standard of care was a cause of the patient's death. *See Ortiz v. Patterson*, 378 S.W.3d 667 (Tex. App.—Dallas 2012, no pet.).

Appellants' attempt to suggest to this Court that Dr. Slominski is required to explain the details of certain treatment which was not provided to Mr. Russ is also

unpersuasive. This Court did not require that of the expert in *Mosely*. The only wording that was necessary to prove causation in *Mosely* was the following:

> [Defendant] failed to identify the early cancer nodule in [plaintiff] in 2004. This failure resulted in delayed diagnosis of lung cancer, required invasive and aggressive treatment and in all medical probability, significant reduction in the life expectancy of [plaintiff].

*Id*. at 780

Further, this Court did not analyze the reliability of any opinions in the expert's report in *Mosely*. That is because the correctness of the opinions in an expert report served under Chapter 74 of the Texas Civil Practice and Remedies Code is not an issue for a motion to dismiss -- it is an issue for summary judgment. Appellants' brief consistently misses the bigger picture of what is and isn't necessary to prove at this point in litigation.

Finally, the Appellants' brief and argument is nothing more than an attempt to have this Court review the Appellee's expert reports *de novo*. A long line of Texas cases, that will be discussed later in this brief, have consistently recognized that two or more judges may look at an expert report and may disagree among themselves with respect to the adequacy of the expert report. *However, the mere fact that two or more judges may disagree with respect to the adequacy of the report does not mean that one or more of those judges abused their discretion in disagreeing with each other.*

*Courts of Appeal have rendered split decisions with respect to the adequacy of expert reports, but the mere fact that one appellate justice dissented, does not mean that the dissenting justice abused his discretion in believing that the expert report was adequate.* The same reasoning and law applies with respect to a trial judge exercising his discretion in determining that an expert report is adequate. Much more is needed in proving an abuse of discretion than mere disagreement over whether the expert reports are adequate.

In this particular case, the Appellants have failed to show any instance where Judge Moyé allegedly failed to apply the proper, prescribed test in finding that the expert reports were adequate. The Appellants wholly failed to show any instance where Judge Moyé was arbitrary and/or denied the Appellants' motion to dismiss in failing to be guided by the applicable rules or principles in determining the adequacy of expert reports.

This case is not a complex case. The material and relevant facts of this case are essentially undisputed. The defendant, Dr. Barrett, erroneously diagnosed Mr. Russ as having squamous cell carcinoma, despite the fact that his biopsy clearly showed that Mr. Russ had melanoma. This led to a course of improper treatment, and further allowed Mr. Russ's melanoma to go undiagnosed and untreated for over a year. When Dr. Barrett misread the biopsy that was taken from Mr. Russ's cheek on January 29,

2015, the true diagnosis was that Mr. Russ had Stage IIa Melanoma. At that time, Mr. Russ had an 81% chance of survival at 5 years and 67% at 10 years. After Mr. Russ's excision of what was wrongly thought to be squamous cell carcinoma, Mr. Russ went over a year without any further treatment. By the time Mr. Russ had a second biopsy on May 24, 2016, his diagnosis was Stage IIIc Melanoma. Mr. Russ's chances of survival dropped to 40% at five years and 24% at ten years. In November of 2016, Mr. Russ's cancer had progressed to Stage IV. This is precisely the type of analysis, in much greater detail, that this Court found to be sufficient, non-conclusory, and sufficiently factual with respect to medical causation and survivability in the *Mosely* opinion.

The expert report of Dr. Slominski has already been determined to be in compliance with Texas law and has already been determined to represent a good-faith effort to comply with the statutory definition of an expert report under the appropriate laws and statutes of the State of Texas, as interpreted and applied by the Texas Supreme Court. The Appellants' brief is nothing more than a "final argument," a *Daubert*-type argument with respect to carefully selected and limited facts; a summary judgment-type argument, and/or an attempt to marshal a number of carefully selected facts. The Appellants have the onerous burden of proving that the Trial Court ignored applicable law and failed to apply the proper standard in

determining the adequacy of Dr. Slominski's report. None of the Appellant's "arguments" in their brief even remotely rise to the level of demonstrating that the Trial Court abused its discretion, was ignorant of the law, and/or failed to apply the law correctly.

## ARGUMENT

**I.    The Honorable Eric V. Moyé  Did Not Abuse His Discretion by Denying Appellants' Motion to Dismiss**

### *A.    Standard of Review*

The standard of review on this appeal is abuse of discretion. Therefore, absent a showing that the Honorable Eric V. Moyé failed to reach the only statutorily mandated decision, his decision must stand. In this case, no such showing can be made.

Judge Moyé's decision that Dr. Slomenski's report is adequate is reviewed under a purely clear abuse of discretion standard. *American Transitional Care Centers of Tex. Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). As the Supreme Court has stated, a party who attacks the ruling of a trial court, according to the abuse of discretion standard of review, labors under a heavy burden. *Lutheran Social Services, Inc. v. Myers*, 460 S.W.2d 887 (Tex. 1970). In one such case, the Supreme Court stated the review standard as follows:

In order to find an abuse of discretion, the reviewing court must conclude that the facts and circumstances of the case extinguish any discretion in the matter and that the law permits but one decision.

*Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985). Of even greater significance, "[a] reviewing court is not allowed to substitute its judgment for that of the trial court when reviewing a discretionary matter." *Renaissance Surgical Ctrs.-South Tex. L.L.P. v. Jimenez*, No. 13–07–121–CV, 2008 Tex.App. LEXIS 6857 (Tex.App.-Corpus Christi Aug.28, 2008, no pet.) (mem.op.); *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41-42 (Tex. 1989). That is, it definitely would be an abuse of discretion for an appellate court "to substitute its judgment with that of the trial court when reviewing a discretionary matter." *Id.* In this particular appeal, the Appellants are attempting to have this appellate court disagree with Judge Moyé and reverse Judge Moyé's order, *without shouldering their onerous burden of proving that Judge Moyé failed to follow the law and abuse his discretion. Again, disagreement with Judge Moyé is in no way tantamount to proving that Judge Moyé abused his discretion.*

To further clarify and define the heavy burden which both an appellant and appellate court must shoulder when reviewing a discretionary order by a district court, the Supreme Court stated:

-17-

> The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules or principles. Another way of stating the test is whether the act is arbitrary and unreasonable.

*Id., citing Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex. 1985).

The Appellants' argument and brief completely ignore a long line of Texas case precedent that the mere fact that a trial court may decide a matter within its discretionary authority differently from what a reviewing court would decide, in similar circumstances, *does not demonstrate that an abuse of discretion has occurred. Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985) cert. denied (citing *Southwestern Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965)); *Jones v. Strayhorn*, 321 S.W.2d 290, 295 (1959); *Tenet Hospitals Ltd. v. Barajas*, 451 S.W.3d 535, 539 (Tex. App.—El Paso 2014, no pet.); *In re Estate of Denman*, 362 S.W.3d 134, 141 (Tex. App.—San Antonio 2011, no pet.); *Collini v. Pustejovsky*, 280 S.W.3d 456, 461 (Tex. App.—Fort Worth 2009, no pet.); *Isaacs v. Bishop*, 249 S.W.3d 100, 110 (Tex. App.—Texarkana 2008, pet. denied); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A mere error of judgment is not an abuse of discretion. *See Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex. 1989) (orig. proceeding); *Diagnostic Research Group v.*

*Vora*, 473 S.W.3d 861, 869 (Tex. App.—San Antonio 2015, no pet.); *In re. R.O.C.*, 131 S.W.3d 129, 132 (Tex. App.—San Antonio 2004, no pet.); *Wolfson v. BIC Corp.*, 95 S.W.3d 527, 531 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

In the absence of findings of fact or conclusions of law, a trial court's judgment will be upheld on any theory supported by the record, *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978), and any necessary findings of fact will be implied, *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992).

**B.** ***Judge Moyé did not abuse his discretion in determining that the expert report of Andrzej T. Slominski, M.D., Ph.D., informed Appellants of the specific conduct called into question and provided the trial court with a basis to conclude this case has merit***

The purpose of the expert report requirement in health care liability cases is to deter frivolous health care liability claims and reduce the expense and time to dispose of frivolous claims, not to operate as a legal gotcha that disposes of claims regardless of their merits. *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012); *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011). Despite this, appeals over expert reports have resulted in protracted pretrial proceedings and multiple interlocutory appeals that threaten to defeat the Act's purpose by increasing costs and causing delay that does nothing to advance claim resolution. *Id.* at 264 (Hecht dissenting opinion). Moreover, in an effort to address the waste of time and money of appeals regarding

-19-

expert reports, the Texas Supreme Court has said the standards for an adequate expert report are lenient. *Loaisiga*, 379 S.W.3d at 264 (Hecht, dissenting opinion).

As this Court is well aware, when considering a motion to dismiss based on a Chapter 74 Expert Report, the Supreme Court has stated this singular standard:

> This issue for the trial court is whether the reports represent a good-faith effort to comply with the statutory definition of an expert report.
>
> ***
>
> A report need not marshal all the Appellee's proof, but it must include the expert's opinion on each of the elements identified in the statute. In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort. First, the report must inform the defendant of the specific conduct the Appellee has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit. (Internal citations omitted).

*Mosely*, 429 S.W.3d at 780., *citing Palacios*, 46 S.W.3d at 879. In accordance with this purpose, the *Palacios* court emphasized that the medical opinions in Chapter 74 Expert Reports do not need to meet the same evidentiary and admissibility/testimony standards of summary judgment proceedings or trials. *Id*. at 53.

Appellants' brief shows their clear lack of understanding of challenges to an expert report served under Section 74.351 of the Texas Civil Practice and Remedies

Code and what a plaintiff's expert report must show at this stage of litigation. None of Appellants' arguments show how the Honorable Judge Eric V. Moyé abused his discretion in denying defendants' motion to dismiss. Instead, Appellants arguments ask this Court to try this case on the merits based solely on the expert report of Dr. Slominski. This is not the test. The Texas Supreme Court has made it abundantly clear that the "merit" test is the only test to be applied by trial courts at this stage of the proceedings. *Scoresby,* 346 S.W.3d at 552.

In showing the Court that a claim has merit, the expert report does not need to rule out every possible cause of harm or damages. *Baylor Med. Ctr. at Waxahachie, Baylor Health Care Sys. v. Wallace,* 278 S.W.3d 552, 562 (Tex.App.—Dallas 2009, no pet.). The expert report does not have to use magic words with respect to causation or the standard of care. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002). All the expert report has to do is inform the defendants of the specific conduct called into question, and provide the trial court with a basis to conclude the case has merit. *Palacios*, 46 S.W.3d at 879.

This Court has provided the blueprint that proves and demonstrates that Judge Moyé did not abuse his discretion in denying the Appellants' motion and that Dr. Slominski's expert report is not conclusory in discussing medical causation in this case. As discussed earlier in this brief, this Court was presented with an almost

identical fact pattern in *Mosely v. Mundine, supra.* In the *Mosely* case, the diagnosis and treatment of cancer was delayed for nearly two years because of the alleged negligence of the defendant physician, which ultimately resulted in aggressive, but delayed, cancer treatment, that ultimately decreased the patient's survivability. Those are the exact same issues to which Dr. Slominski's expert report is directed. In *Mosely*, this Court concluded that the following five lines from the plaintiff's retained expert's report was not conclusory and was enough to determine that the expert report was adequate as to causation:

> [Defendant] failed to identify the early cancer nodule in [plaintiff] in 2004. This failure resulted in delayed diagnosis of lung cancer, required invasive and aggressive treatment and in all medical probability, significant reduction in the life expectancy of [plaintiff].

*Mosely*, 249 S.W.3d at 780.

With this Court's blueprint from *Mosely* in mind, let's take a look at Dr. Slominski's report discussing medical causation and survivability:

**Standard of Care and Breach**
- The standard of care for a Board Certified Dermatopathologist is to be able to correctly identify tissue that is Melanoma from tissue that is Squamous Cell Carcinoma. Microscopically, they are distinctly different in appearance and characteristics and the standard of care required to identify the 1/29/2015 biopsy as Melanoma, *not* squamous cell carcinoma. (CR 141).

- Dr. Barrett essentially admitted his mistake in issuing his "Amended" report, agreeing with everyone else that the tissue biopsy of 1/29/2015 showed Melanoma. This misdagnosis lead [sic] to over a year's delay in the proper diagnosis being made and Melanoma treatment to begin. The Melanoma progressed between 1/29/2015 and May of 2016. (CR 141).

## Subsequent Aggressive Treatment:

- Approximately one year later, on 5/08/2016 and 5/16/2016, Mr. Russ presented to Baptist Hospitals of Southeast Texas for what was described as a "submandibular mass." In his Consultation Note, Dr. Tuan Anh Dao noted that Mr. Russ had noted a swelling on the right side of his neck for approximately a month, and that more recently, he had noticed that the swelling had gradually increased. A CT scan was performed that was "suggestive of lymph node enlargement." A biopsy was performed, consisting of one 19 gauge FNA and three 20 gauge cores, of lymph nodes, with a Final Pathologic Diagnosis of "MALIGNANT MELANOMA METASTATIC" in all biopsies. In light of these findings, Mr. Russ was transferred to M.D. Anderson Cancer Center in Houston, Texas, where he was admitted on 5/24/2016. Physicians at M.D. Anderson reviewed Mr. Russ's medical history, including the history of the previously diagnosed squamous cell carcinoma and Mohs surgery. M.D. Anderson requested that ProPath forward to them the *original* biopsy slides that had been obtained from the biopsy performed by Dr. Morrell on 1/29/2015 and thereafter forwarded to ProPath. M.D. Anderson's review of the *original* biopsy tissue of 1/29/2015 showed that the tissue was unmistakably "Melanoma, invasive, lentigo malignant type." The Melanoma that was biopsied on 1/29/2015 was also classified as a "Clark Level IV, Breslow Thickness 1.6 mm, 3 mitotic figures, and with no ulceration" – classified by the M.D. Anderson physicians as Stage II. To quote from Dr. Rodade Amaria's Melanoma Medical Oncology Progress Note of 6/02/2016: "Of note, tissue from the initial biopsy of the right cheek on 1/29/2015, which was initially read as a squamous cell carcinoma, was re-read here at M.D.

Anderson Cancer Center and unfortunately reveals Melanoma, invasive, lentigo maligna type, Clark Level IV, Breslow Thickness 1.6 millimeters, with three mitotic figures and no ulceration." Unfortunately, due to the original misdiagnosis, there was a delay in over a year in proper management and diagnostic follow-up, which would include sentinel lymph node biopsy, M.D. Anderson also determined that the Melanoma had progressed to a "Stage IIIc." (CR 139).

- Mr. Russ was started with two cycles of ipilimumab[2] and nivolumab.[3] A CT of Mr. Russ's neck with contrast, was performed at M.D. Anderson on 5/25/2016. The report of that CT indicated: "Extensive matted adenopathy is present in the right neck. The largest conglomerate nodal mass is found in the right upper neck involving the submandibular and level IIA regions measuring 7.0 cm AP x 3.6 cm transverse. . . Adenopathy is found from right level 2A to the supraclavicular fossa, also involving levels 5A and 5B. A right supraclavicular lymph node measures 2.3 x 3.5 cm. A large supraclavicular-retroclavicular mass measures 2.7 x 8.4 cm. A nodal metastasis is also present in the suprasternal region on series 2, image 43." The CT reports: "Extensive adenopathy is present throughout the entire right neck, largest in the right submandibular and level IIA region as well as the supraclavicular-retroclavicular region. . .The known extensive right neck lymphadenopathy is intensely hypermetabolic." Unfortunately, it was determined by Mr. Russ's physicians at M.D. Anderson that the Melanoma was so extensive and had spread to such an extent in his right neck and supraclavicular area that it was too extensive for Mr. Russ to be a candidate for their neoadjuvant trial. Initial treatment with ipilimumab and nivolumab showed interval decreases in the size of the cervical lymphadenopathy throughout the right neck. A surgical modified

---

[2] Ipilimumab is a type of targeted cancer drug used to treat melanoma. It is a type of chemotherapy.

[3] Nivolumab is a type of targeted cancer drug used for the treatment of unresectable or metastatic melanoma and disease progression in combination with ipilimumab.

radical neck dissection on the right was planned. Complicating Mr. Russ's treatment was that he was also suffering from anemia and a hematology consult was obtained through Dr. Michael Kroll. In his assessment of Mr. Russ on 7/28/2016, Dr. Kroll stated: "I think he has a reactive leuko- and thrombocytosis and 'chronic disease' anemia causing the borderline low normocytic hypoproliferative anemia...His history and the rising LDH suggests they are related to melanoma tumor burden which is obvious target of all therapeutic interventions to date." Mr. Russ thereafter developed altered mental status, slurred speech, and difficulty in thought processes at times and was re-admitted to M.D. Anderson on 8/10/2016. In light of his increased symptoms, the surgery that had been planned for 8/10/2016 was rescheduled. A CT of his chest, abdomen and pelvis performed on 8/11/2016 showed: "New diffuse osteolytic lucencies, consistent with new diffuse osteolytic metastatic disease. Mild right supraclavicular lymphadenopathy suspicious for nodal metastasis. Enhancing subcentimeter nodularities along the dependent gallbladder wall." On 8/12/2016, Mr. Russ underwent a bone marrow biopsy. Imaging performed on 8/11/2016 also revealed new osteolytic bone lesions for which he was referred to interventional radiology for a CT-guided bone biopsy. On 8/16/2016, Mr. Russ underwent a left iliac lytic bone lesion biopsy. The above-referenced biopsies as well as the CT imaging that was performed during this M.D. Anderson hospital admission was summarized in the Discharge Summary as follows: "Melanoma with diffuse bone involvement. Imaging done after admission revealed CT CAP done revealed diffuse bone involvement. A BMBX/ASP and bone biopsy both done and confirmed this to be melanoma." (CR 140).

● Following discharge, on 8/17/2016, Mr. Russ began treatment with Dabrafanib[4] [sic] and Trametinib.[5] Mr. Russ's hyperanemia

---

[4] Dabrafenib is a targeted chemotherapy for advanced melanoma with certain genetic mutations to slow the growth and spread of cancer cells.

[5] Trametinib is also a targeted chemotherapy for advanced melanoma with certain genetic mutations to slow the growth and spread of cancer cells.

from which he had been suffering was indicated to be medically caused by the melanoma and the hypercalcemia, which Mr. Russ was suffering from at the time of his admission on 8/10/2016, was indicated to be likely due to the newly discovered melanoma bone lesions. His diagnosis on discharge was Stage IV M1c melanoma with bone and lymph node involvement. Mr. Russ continued with his chemotherapy throughout the remainder of 2016; however, an MRI of his brain performed on 11/16/2016 showed "Interval development of at least two enhancing brain metastases." A STAT referral was made for neuro-radiation and neurosurgery for possible gamma knife to those lesions. (CR 140).

## Reduction in Life Expectancy:

- According to the oncologist and other cancer specialists at M.D. Anderson, whose findings and opinions are described and quoted from above, because of the delay in over a year in diagnosing melanoma and beginning appropriate treatment, Mr. Russ's Melanoma progressed rapidly from being a Stage IIa to Stage IIIc by 5/24/2016, and eventually to Stage IV. Medical literature, including the American Cancer Society, recognizes "Survival Rates for Melanoma." According to the American Cancer Society, for Stage IIa, "The 5-year survival rate is around 81%. The 10-year survival is around 67%." However, if the diagnosis is delayed and appropriate treatment is not started until the Melanoma has reached Stage IIIc, according to the American Cancer Society: "The 5-year survival rate is around 40%. The 10-year survival is around 24%." (CR 141).

- As is evident from Mr. Russ's M.D. Anderson records, and the evaluation and opinions in his chart from the cancer specialists at M.D. Anderson, from 1/29/2015 to May of 2016, Mr. Russ's Melanoma spread to his lymph nodes, bones, and by November 2016, to his brain. According to his cancer specialists at M.D. Anderson, who reviewed the *original* biopsy tissue of 1/29/2015, Mr. Russ's Melanoma in January, 2015, was only Stage IIa. According to the Melanoma Research Foundation, a Melanoma

-26-

Stage IIa is classified as: "The tumor is either 1-2 mm thick and ulcerated or 2-4 mm thick and not ulcerated. It has not spread to any lymph nodes or other organs." Therefore, based upon my education, training, experience, based upon Mr. Russ's medical records that I have reviewed, including the testing, observations, imaging studies, and opinions of Mr. Russ's cancer specialists at M.D. Anderson hospital, the mis-diagnosing Mr. Russ's Melanoma in January, 2015, in reasonable medical probability, can be linked to Mr. Russ's Melanoma to progress from a Stage IIa, to metastasizing disease to lymph nodes, bones, and brain (progress to Stage IIIc and ultimately Stage IV), whereby Mr. Russ's "Survival Rate for Melanoma" went from being around 81% at five years and 67% at ten years, to only 40% at five years and only 24% at ten years, according to the American Cancer Society and other recognized medical literature and studies. (CR 141).

Both Dr. Slominski's report and the expert report in *Mosely*, identify the standard of care and how the defendant breached the standard of care, how the delay in the proper diagnosis led to subsequent aggressive treatment and a significant reduction in life expectancy. Of greater significance, this Court held that just five lines in the expert's report in *Mosely* was sufficient to show that the expert's opinions on causation were not conclusory. Instead of just one sentence consisting of five lines, Dr. Slominski's report goes on for pages, setting forth the factual details of medical causation, the necessary medical care and treatment that Mr. Russ received in the face of the delayed diagnosis of melanoma, and reliable, nationally recognized survivability data based on the precise facts in this case with respect to Mr. Russ's

decreased survivability proximately caused by the erroneous pathology diagnosis of the defendants.

This Court's opinion in *Mosely* is also significant in pointing out the erroneous argument and improper standard that the Appellants suggest needed to be included in Dr. Slominski's report. With respect to the limited purpose that an expert report provides at this stage of the litigation, an expert is not required to explain the less invasive treatments that a cancer patient would have received, but for the defendants' improper diagnosis. Appellants argue that Dr. Slominski is required to explain for them the type of treatment that was not provided to Mr. Russ, including the sentinel lymph node biopsy. However, going back to *Mosely*, this Court did not require the expert in that case to explain the details of what less invasive treatment would have been, or how it would have helped the plaintiff. *Mosely*, 249 S.W.3d at 780-781. Similarly, Dr. Slominski's report does not have to explain for them, a sentinel node biopsy. Appellants argument is yet another example that Appellants are asking this Court to try the case on its merits, based solely on an expert report served under Chapter 74 of the Texas Civil Practice and Remedies Code.

Appellants' brief unsuccessfully tries to compare Dr. Slominski's report to the report in *Ortiz v. Patterson*. In *Ortiz*, the injuries to the patient did not have to do with

misdiagnosed cancer; instead the issue involved undiagnosed pneumonia. *Ortiz*, 378 S.W.3d at 670. There, the defendant objected to the plaintiff's expert report as being conclusory as to causation. *Id*. at 674. The only part of the plaintiffs' expert report addressing causation was one sentence, stating "Failing to do the appropriate tests, make the correct diagnosis, and recognize the clinical severity of the risks involved in not referring Mr. Ortiz for admission to a hospital did not meet the standard of care, and contributed to the premature death of this man." *Id*. At 673. The plaintiffs also tried to compare the facts and report of their case to that of *Mosely*. *Id*. at 675. In finding the plaintiffs' expert report deficient as to causation, this Court stated that unlike the report in *Mosely*, the plaintiffs expert failed to explain how the patients condition worsened from "very ill" to death, without relying on impermissible inferences. *Id*.

The expert report and facts of *Ortiz* are nothing like Dr. Slominski's expert report or the facts of this case. Dr. Slominski's report explains in detail Dr. Barrett's egregious error, how this error led to a delay in proper diagnosis and follow up treatment, it describes the aggressive treatment that Mr. Russ endured, and how because of the delay Mr. Russ's life expectancy was reduced significantly.

Appellants' final complaint is that the statistics used in Dr. Slominski's report cannot supply proof of causation. Again, this argument shows a clear lack of understanding with respect to proper challenges to an expert report, and what an expert report is required to do at this stage of litigation. Unfortunately for Appellants', their final argument serves as a *coup de gras* for their brief.

In support of their final complaint, Appellants cite to *Merrel Dow Pharmaceuticals, Inc. V. Havner*. In *Havner*, unlike the present case, the plaintiff brought suit under a theory of products liability. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 708 (Tex. 1997). This means that an expert report served under Section 74.351 of the Tex. Civ. Prac. & Rem. Code was not required, nor was it ever part of any issue in the case. The main issue involved was the scientific reliability of the Havner's evidence. *Id*. at 709. The Havner's evidence was challenged by a motion in limine just before trial began. *Id*.

Without going into further detail, this Court can already see why this case doesn't apply. We are not about to go to trial. This is not a motion in limine. Appellants have not filed a *Daubert* motion, nor can they at this time. Appellants have not filed a summary judgment motion, nor can they at this time. "While the purposes of a motion to dismiss under section 74.351 and a motion for summary

judgment are similar in some respects, their scope is clearly different." *Wissa v. Voosen*, 243 S.W.3d 165, 169 (Tex. App.—San Antonio 2007, pet. denied). The correctness of an expert's opinions in his or her report is an issue for summary judgment, not a motion to dismiss under Chapter 74 of the Texas Civil Practice and Remedies Code. *Id*. at 169-170.

The trial court is not tasked with determining the reliability of certain statistics in Dr. Slominski's report at this stage of litigation. The trial court is not even tasked with determining whether or not the opinions in the expert report are flat wrong scientifically. The only thing the trial court is tasked with doing is determining if the report informs the defendants of the specific conduct called into question and whether the report provides the court a basis to conclude that plaintiffs' claims have merit. *Mosely*, 429 S.W.3d at 780., *citing Palacios*, 46 S.W.3d at 879.

This same issue is also addressed in *Mosely*. There, the expert merely stated in his own opinion, without reference to any studies or literature, that the plaintiff suffered a significant reduction in life expectancy because of the defendant's breach and the delay in the proper diagnosis and treatment. *Mosely*, 249 S.W.3d at 780. This Court did not force the expert's opinions in his report to rise to the level of reliability

-31-

needed to overcome a *Daubert* motion or motion for summary judgment. *Id*. Yet, that is exactly what Appellants' are asking this Court to do.

The reality is that Judge Moyé had more than enough to determine that the defendants' conduct was implicated and that this case has merit. Dr. Slominski's report and the facts of this case are nearly identical to *Mosely*, where this Court has decided the expert report was adequate. Dr. Slominski's report sets out what conduct was expected but not given, and how that led, in reasonable medical probability, to Mr. Russ's dramatic decrease in life expectancy. Let's not forget what this case is about. Mr. Russ was misdiagnosed, and later told that he didn't need any treatment for a year. In that year, his cancer spread and by November of 2016, was Stage IV. Just as Dr. Slominski foreshadowed in his report, Mr. Russ did die. He lost his life at the young age of 46. Clearly, Judge Moyé did not abuse his discretion in denying Appellants' motion to dismiss.

**C.** ***Judge Moyé did not abuse his discretion in determining that Dr. Slominski is qualified to opine on the standards of care and causation***

In Defendants' original objections to Dr Slominski's report, the Appellants raised the objection that Dr. Slominski was not qualified to opine with respect to medical causation. However, in their appellate brief, Appellants have abandoned that issue with respect to Dr. Slominski's qualifications. Therefore, neither Dr.

Slominski's qualifications, nor Judge Moyé's determination that Dr. Slominski is qualified to opine as to causation in this matter is an issue on appeal.

Nevertheless, there is no question that Dr. Slominski is qualified to render an opinion with respect to causation in this case. As this Honorable Court is well aware, the proper inquiry concerning whether a doctor is qualified to testify is not his or her area of practice, but rather the doctor's familiarity with the issues involved in the claim before the court." *Menefee v. Ohman*, 323 S.W.3d 509, 514 (Tex. App.—Fort Worth 2010, no pet.); *see also Blan v. Ali*, 7 S.W.3d 741 (Tex. App.–Houston [14th Dist.] 1999, no pet.). (holding that a neurologist could provide an expert report against a cardiologist and emergency room health care provider indicating that the standard of care for treating a stroke patient is the same for all doctors).

The issue before the Court with respect to Appellants is whether or not misdiagnosing Mr. Russ with squamous cell carcinoma when his biopsy clearly showed melanoma, is a breach of the standard of care and a cause of his injuries and ultimate death. Dr. Slominski is Board Certified in Anatomic Pathology and Dermatopathology. (CR 138). In addition, he is an active member in the American Association for Cancer Research and the American Society of Dermatopathology. *Id*. Dr. Slominski is a Professor of Pathology at the University of Alabama Birmingham,

and has authored and co-authored more than 340 Peer-Reviewed Journal Articles, a number of which involve Melanoma. *Id*. He is currently an Editorial Board Member for the Journal of Melanoma Management, Anticancer Research, and Expert Review of Dermatology. *Id*. His education, training and experience has made him "very familiar with the standard of care that should have been followed [by Dr. Barrett], and how the deviation from that standard of care medically caused" Mr. Russ' medical problems which led to his untimely death. *Id*.

Clearly, Dr. Slominski has extensive knowledge and training in connection with Melanoma and other cancers so as to be qualified to render opinions with respect to medical causation in a case where delayed diagnosis and treatment affected the plaintiff's life expectancy.

Dr. Slominski's report clearly meets the requirements of Rule 702 of the Texas Rules of Evidence and Chapter 74 of the Texas Civil Practice and Remedies Code. Accordingly, Judge Moyé did not abuse his discretion in overruling the objection to Dr. Slominski's qualifications and denying Defendants' motion to dismiss.

**II.  Alternatively, If the Expert Report of Dr. Slominski is Found Deficient, This Court Should Remand the Case to the Trial Court and Order that Appellee be Provided with a Thirty-Day Extension to Cure any Deficiency**

Texas law has done away with prior harsh rulings which dismissed a plaintiff's claims, regardless of its merit, based on a deficiency in an expert report. *Scoresby*, 346 S.W.3d at 556.The Texas Supreme Court in *Scoresby*, has made it clear that if there are deficiencies in an expert's report in a healthcare liability claim, the plaintiff should be given an opportunity to cure the deficiencies. *Id*. at 557. This more lenient standard allows a plaintiff a fair opportunity to show that their claims have merit. *Id*. Further, even when a trial court finds that a timely served Chapter 74 exert report fails to satisfy the "good-faith" effort standard, TEX. CIV. PRAC. & REM. CODE §74.351 clearly provides for one 30-day extension in which the claimant can cure any deficiency. Even reports that require the Court to make an "educated guess" regarding an essential element are curable. *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276 (Tex. App.—Austin 2007, no pet.).

When an expert report contains the opinions of an expert that the case has merit, and which implicates the defendants' conduct, a thirty-day extension to cure any deficiency in the report should be granted. *Scoresby*, 346.S.W.3d at 557. In the unlikely event that this Honorable Court finds that Judge Moyé abused his discretion, the proper course of action would be to remand this case back to the trial court and order that plaintiffs be afforded a thirty-day extension to cure any deficiency the expert report of Dr. Slominski. There is no doubt that this claim has merit. Appellants

do not dispute that Mr. Russ was erroneously diagnosed with squamous cell carcinoma, even though his biopsy clearly showed he had melanoma, nor do Appellants dispute that Mr. Russ was told, in light of the fact that his physicians thought he had squamous cell carcinoma, that after the excision he did not need any type of treatment for a year. In that year, Mr. Russ's cancer spread and by the tyime the proper diagnosis was made, his chances of survival had been substantially reduced. Therefore, in the unlikely event that a deficiency is found in Dr. Slominski's report such that Judge Moyé abused his discretion, when applying the guidance of the Texas Supreme Court in cases such as this one, the Appellee should be given the opportunity to cure any deficiency found in the expert report of Dr. Slominski.

## CONCLUSION

The Honorable Judge Eric V. Moyé did not abuse his discretion in denying Appellants' motion to dismiss for failing to file an adequate expert report. The expert report of Dr. Slominski satisfies the good faith requirements under Texas law and provided Judge Moyé with a basis to conclude Appellee's claims have merit.

Though Appellants have abandoned their objection to challenge Dr. Slominski's qualifications on appeal, Dr. Slominski is qualified to opine on the standard of care and causation with respect to the Appellants. Texas case law has made clear that an expert's area of practice is not the proper inquiry. The proper

inquiry is whether the expert has familiarity with the issues involved in the claim before the court.

In the unlikely event that this Honorable Court determines that Judge Moyé abused his discretion, the Texas Supreme Court has made clear that plaintiffs should be granted a thirty day extension to cure any deficiency in their expert report. If that is the case, this matter should be remanded to the trial court for further proceedings, including granting plaintiff a thirty-day extension to cure any deficiency in the expert report of Dr. Slominski.

## **PRAYER**

For all of the foregoing reasons, Appellees respectfully ask this Court to affirm Judge Moyé's order denying the Appellants' motion to dismiss or, in the alternative, remand the case to the trial court for further proceedings, and for all other relief to which Appellees may show themselves entitled.

[*Signature Page to Follow*]

Respectfully submitted,


**THE LEWIS LAW FIRM**


 */s/   Craig Lewis*
Craig Lewis
State Bar No. 12283500
Barbaran@LLF7.com
Aaron J. Arenas
State Bar No. 24103826
Aarona@LLF7.com
3131 Eastside Street, Suite 425
Houston, Texas  77098
Telephone: (713) 842-7080
Facsimile: (832) 649-7239


**APPEAL COUNSEL FOR PLAINTIFFS/
APPELLEES, AMANDA RUSS, ET AL.**

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that on February 8, 2018, I have served this document on all other parties listed below via E-file service:

Mr. Michael Jung
Mr. Joseph Turano
STRASBURGER & PRICE, LLP
6000 Bank of America Plaza
901 Main Street
Dallas, Texas 75202

/s/ Craig Lewis
Craig Lewis

# CERTIFICATE OF COMPLIANCE WITH RULE 9.4

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Tex. R. App. P.9.4(i)(2)(B) because:

[x]　this brief contains 8,349 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1), or

2. This brief complies with the typeface requirements of Tex. R. App. P.9.4(e) because:

[**x**]　this brief has been prepared in a proportionally spaced typeface using WordPerfect Office X8 in Times New Roman font in 14-point in the body and 12-point in the footnotes, or

[ ]　this brief has been prepared in a monospaced typeface using _____ with _____.

By: */s/ Craig Lewis*
Craig Lewis
State Bar No. 12283500
Barbaran@LLF7.com
Aaron J. Arenas
State Bar No. 24103826
Aarona@LLF7.com
3131 Eastside Street, Suite 425
Houston, Texas  77098
T: (713) 842-7080
F: (832) 649-7239

**APPEAL COUNSEL FOR PLAINTIFFS/ APPELLEES, AMANDA RUSS, ET AL.**